1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVAN CASTANEDA,<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE, Commissioner<br>of Social Security,<br><br>        Defendant. | 1:11-cv-00267 GSA<br><br>**ORDER REGARDING PLAINTIFF'S<br>SOCIAL SECURITY COMPLAINT** |

## BACKGROUND

Plaintiff Ivan Castaneda ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits pursuant to Title II of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  (*See* Docs. 3 & 9.)

1

## FACTS AND PRIOR PROCEEDINGS[2]

In May 2007, Plaintiff filed an application for disability insurance benefits, alleging disability beginning December 7, 2006. *See* AR 214-216. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 117-126. ALJ Bert C. Hoffman, Jr., held a hearing and issued an order denying benefits on May 19, 2009, finding Plaintiff was not disabled. AR 105-112. On August 28, 2009, however, the Appeals Council remanded the case for further proceedings. AR 114-116.[2] Following those additional proceedings, ALJ Sharon L. Madsen issued an order denying benefits on March 5, 2010, again finding Plaintiff was not disabled. AR 10-18. Thereafter, on December 22, 2010, the Appeals Council denied review. AR 1-3.

**2010 Hearing Testimony**

ALJ Madsen held a hearing on February 4, 2010, in Fresno, California. Plaintiff appeared and testified. He was represented by attorney Robert D. Christenson. Vocational Expert ("VE") Thomas Dachelet also testified. AR 48-80.

Plaintiff was born September 19, 1950, making him fifty-nine years old on the date of the hearing. AR 53. He is five feet, seven inches tall, and weighs about 155 pounds. AR 53. Plaintiff is not married and lives by himself in a mobile home. AR 53-54. He receives a VA benefit of $265 a month. AR 54. After graduating from high school, Plaintiff attended junior college for about a year. AR 54.

Plaintiff is able to shower, shave and dress himself. AR 54. He is able to cook, shop and perform household chores. AR 54-55. He visits with family every week, but does not attend church services nor does he participate in any other social activity. Plaintiff grows cacti as a hobby. AR 55. When he was asked about a typical day, Plaintiff explained he gets up and has

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[2] The Appeals Council remand requires the ALJ to obtain additional evidence regarding Plaintiff's mental impairments, further evaluate Plaintiff's mental impairments, further consider Plaintiff's maximum residual functional capacity, and obtain evidence from a vocational expert regarding the effect of the limitations on Plaintiff's occupational base. *See* AR 115.

1  breakfast and takes his medication.  Then he may watch television or read a little.  He may take

2  an occasional nap, but that napping is not a regular occurrence.  AR 56; *see also* AR 70.

3       During his employment of nearly fourteen years with a pistachio plant, Plaintiff was most

4  recently employed in the maintenance department.  He wrote work orders, ensured supplies were

5  available, purchased the necessary supplies and made weekly bank deposits.  AR 56-57.  He was

6  not responsible for the hiring or firing of any employees.  AR 57.  The heaviest weight lifted

7  while Plaintiff was performing his most recent position was the equivalent of a five-gallon bottle

8  of water.  AR 59.  Prior to working in maintenance, while in the sanitation department, Plaintiff

9  was not required to lift anything over about forty pounds.  AR 60.

10       With regard to his physical complaints, Plaintiff suffers from lower back pain that causes

11  numbness in his legs.  AR 61.  He can currently lift about sixteen pounds as he uses eight-pound

12  weights to exercise.  AR 61.  The back pain comes and goes and travels to his feet.  AR 62.  A

13  couple times a month he has bad days when he does not function well.  AR 70.  Bad days involve

14  uncontrollable shaking and the inability to concentrate more than a couple of minutes.  AR 70.

15  The pain is aggravated by sitting.  Lying down is the most comfortable position.  AR 62.  His

16  knees give him trouble as well, the right more so than the left.  AR 62.  He also feels pain in his

17  right elbow following an incident with a door "shutting on" him two years prior.  AR 61.  For the

18  pain in his back, elbow and knees, Plaintiff does not take any prescription medication.  AR 63-

19  64.  He wears two elastic bandages over his knees and it "really helps at night."  AR 64.  Plaintiff

20  does take prescription medication for high blood pressure and cholesterol.  AR 65-66.

21       Following treatment and surgery for prostrate cancer, Plaintiff has started urinating in his

22  pants; he is also being followed for swollen lymph nodes.  AR 65.  Following the prostrate

23  surgery, Plaintiff did not undergo radiation therapy or chemotherapy.  AR 65.

24       When he was asked how long he could sit without having to get up, Plaintiff indicated he

25  could do so for about fifteen to twenty minutes.  He could stand for about fifteen minutes.  AR

26  66-67.  Plaintiff may be able to walk a mile and a half on even, flat terrain, however, on any

27  uneven or hilly surface he loses his balance, and has fallen in the past.  AR 67.  He also has

28  difficulty with stairs.  AR 67.

1  With regard to Plaintiff's mental impairments, these stem from his brother's murder and

2  dismemberment.  AR 67.  The murder occurred in 2001 and he has not been the same since.  AR

3  67.  He has trouble concentrating and sometimes "lose[s] a day."  AR 68.  When he was asked

4  about getting along with others, Plaintiff indicated that if he were in a room full of people he did

5  not know, he would rather leave the room.  Even if he were in that room with an individual he

6  did know, he "can't get all of the sentences out" and mumbles.  AR 68.  Medications have been

7  prescribed by Drs. Nile and Nalavenkata.  AR 68.  Plaintiff sees Dr. Nile about every three

8  months.  AR 69.  Stressful situations are difficult for him and he tries to avoid them.  AR 71.

9  Alcohol consumption is currently about a beer a day, rather than twelve in a week.

10  Plaintiff is still using one marijuana cigarette a day to treat anxiety.  AR 69.  His anxiety is a

11  problem every day.  AR 71.

12  Plaintiff has undergone both a physical and mental examination for purposes of a pension

13  benefit through the Veteran's Administration.  AR 71.  Additionally, within the past two years

14  Plaintiff has received what he called "shock therapy" on his legs and fingers.[3]  AR 72-74.

15  VE Dachelet identified Plaintiff's past relevant work as a janitor, medium and unskilled,

16  and a clerk and outside delivery driver, light and unskilled or semi-skilled with an SVP[4] of three.

17  AR 74.  The VE indicated there was no transferability of this work to sedentary work.  AR 75.

18  In the first hypothetical, the VE was asked to assume a hypothetical person of the same

19  age, education and work experience as Plaintiff, restricted to simple, routine tasks but without

20  exertional limitation.  AR 75.  VE Dachelet indicated such an individual could perform

21  Plaintiff's past work as either a janitor or delivery driver.  AR 75.

22  In a second hypothetical, the VE was asked to assume the same factors as indicated

23  previously, however, the individual was limited to occasional public contact.  VE Dachelet again

24  indicated the individual could perform Plaintiff's past work as either a janitor or delivery driver.

25  AR 75.

26

27  [3]The ALJ and Plaintiff's attorney believes the treatment was in fact a nerve conduction study.

28  [4]"SVP" refers to specific vocational preparation.

4

In a third hypothetical question, the VE was asked to assume the same individual, limited to simple, routine tasks and occasional public contact, who could sit, stand or walk for six hours in an eight-hour work day, with the ability to lift fifty pounds occasionally and twenty-five pounds frequently.  AR 76.  VE Dachelet's response did not change: the individual could perform Plaintiff's past work.  AR 76.

In a fourth hypothetical, the VE was asked to assume the same individual, limited to simple, routine tasks and occasional public contact, who could sit, stand or walk for six hours in an eight-hour work day, with the ability to lift twenty pounds occasionally and ten pounds frequently.  AR 76.  The VE indicated that the individual could perform Plaintiff's past relevant work as a "clerk driver."  AR 76.

Next, the VE was asked to assume the same individual, limited to simple, routine tasks and occasional public contact, who could sit, stand or walk for six hours in an eight-hour work day, with the ability to lift fifty pounds occasionally and twenty-five pounds frequently, yet who is unable to concentrate for more than sixty minutes at a time before requiring a thirty-minute break.  AR 76.  VE Dachelet indicated the world of work would be closed for such an individual. AR 76.

In a hypothetical question posed by Plaintiff's counsel, the VE was asked to assume an individual of the same age, education and work experience as Plaintiff, with a markedly limited ability to maintain attention and concentration for extended periods, a markedly limited ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary allowances, and a markedly limited ability to complete a normal workday and workweek without interruption from psychologically based symptoms, and an inability to perform work at a consistent pace.  AR 77.  VE Dachelet indicated the world of work would be closed for such an individual.  AR 77.

Finally, VE Dachelet was asked to consider the same individual, but who would be absent from work more than three times a month as the result of impairments or treatment, who has near continuous anxiety and depression affecting the ability to function independently or continuously, appropriately and effectively, has impaired impulse control and cannot maintain

and establish effective relationships, who has difficulty adapting to stressful circumstances, and has intermittent ability to perform the activities of daily living.  AR 77-79.  The VE indicated the world of work would also be closed to this individual.  AR 79.

**Medical Record**

The entire medical record was reviewed by the Court.  AR 310-718.  The medical evidence will be referenced below as necessary to this Court's decision.

**ALJ's Findings**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 10-18.

More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 7, 2006.  AR 12.  Further, the ALJ identified lumbar degenerative disc disease, major depression, and post traumatic stress disorder ("PTSD") as severe impairments. AR 12-13.  Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments did not meet or exceed any of the listed impairments.  AR 13-14.

Based on her review of the entire record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to lift and carry fifty pounds occasionally and twenty-five pounds frequently, can walk, stand and sit for six hours in an eight-hour workday, with the ability to perform simple routine tasks with occasional public contact.  AR 14-17.

Next, the ALJ determined that Plaintiff was capable of performing his past relevant work as a handyman/janitor and outside delivery driver.  Further, the ALJ determined that Plaintiff's past work did not require the performance of work related activities precluded by the RFC.  AR 17.  Therefore, the ALJ found Plaintiff was not disabled.  AR 17-18.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

*Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION

Plaintiff claims four errors on appeal: (1) that the ALJ erred in failing to adopt the opinion of Plaintiff's treating psychiatrist; (2) that the ALJ erred in failing to adopt the opinion of an examining physician; (3) that the ALJ erred by finding Plaintiff capable of lifting and carrying fifty pounds occasionally and twenty-five pounds frequently; and (4) that the ALJ erred in finding Plaintiff not credible.  (*See* Doc. 12.)

//

//

*The Opinion of the Treating Psychiatrist*

Plaintiff contends the ALJ erred in failing to adopt the opinion of Plaintiff's treating psychiatrist.  (Doc. 12 at 12-17.)  The Commissioner contends the ALJ properly rejected the opinion.  (Doc. 13 at 7-10.)

**Applicable Legal Standard**

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).  As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).  At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).  Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984).  As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician.  *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.  *Pitzer v. Sullivant*, 908 F.2d at 506 n. 4; *Gallant v. Heckler*, 753 F.2d at 1456.  In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the

testimony of a nonexamining medical advisor.  *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55

(9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir.

1995).  For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a

treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to

reject the opinions of Magallanes's treating physicians . . .."  *Magallanes*, 881 F.2d at 752.

Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also

relied on laboratory test results, on contrary reports from examining physicians, and on testimony

from the claimant that conflicted with her treating physician's opinion.  *Id*. at 751-52.

Here, the ALJ must offer specific and legitimate reasons for rejecting treating physician

Dr. Nile's contradicted opinions.

**Summary of Relevant Medical Evidence**

Initially, this Court notes it has carefully reviewed the treatment notes and records of

Lynn M. Nile, M.D., Plaintiff's treating psychiatrist.  *See* AR 311, 313-316, 318, 329, 331, 345,

348-349, 393, 418, 432, 492, 511, 596-600, 602-607, 620, 661, 667, 671-672, 708.

On March 9, 2009, Dr. Nile completed a Mental Impairment Questionnaire form.  Dr.

Nile has been treating Plaintiff since February 14, 2005, and sees him every two to three months,

to treat PTSD and a depressive disorder.  AR 624.  Dr. Nile identified the following regarding

Plaintiff's "signs and symptoms": poor memory, appetite disturbance with weight change, sleep

disturbances, personality change, mood disturbance, emotional lability, anhedonia or pervasive

loss of interest, psychomotor retardation, feelings of guilt/worthlessness, difficulty thinking or

concentration, social withdrawal or isolation, decreased energy, intrusive recollections of a

traumatic experience, generalized persistent anxiety, and hostility and irritability.  AR 624.

Asked to describe the clinical findings demonstrating the severity of the patient's symptoms, Dr.

Nile wrote, in discernable part that Plaintiff "is easily distractable, has poor . . . clinically

depressed, poor concentration + poor retention.  Poor short term memory, easily irritated, easily

angered, hard to set goals or complete projects."  AR 625.  The doctor identified Plaintiff's

prognosis as guarded.  AR 625.  Dr. Nile concluded that Plaintiff was incapable of even low

stress jobs, and indicated that, on average, his impairment would cause him to be absent from

work more than three times per month.  AR 626.  He cannot maintain a regular job, in the

doctor's opinion, because it is hard for him to focus and concentrate, he has difficulty with his

short term memory, is easily irritated or angered, and has difficulty keeping "thoughts in order or

straight."  AR 626.  With regard to functional limitations as a result of Plaintiff's mental

impairment, Dr. Nile concluded he was mildly limited regarding the activities of daily living,

moderately limited in maintaining social functioning, and extremely limited in maintaining

concentration, persistence, or pace.  AR 627.

   In a Mental Assessment of the same date, Dr. Nile identified Plaintiff as moderately

limited in his abilities to: remember locations and work-like procedures, carry out very short and

simple instructions, sustain an ordinary routine without special supervision, work in coordination

within proximity of others without being distracted, make simple work-related decisions, interact

appropriately with the general public, accept instructions and respond appropriately to criticism

from supervisors, and get along with coworkers or peers.  AR 629-631.  Dr. Nile identified

Plaintiff as markedly limited in his ability to: understand and remember very short and simple

instructions, understand and remember detailed instructions, carry out detailed instructions,

maintain attention and concentration for extended periods, perform activities within a schedule,

maintain regular attendance and be punctual, complete a normal work-day and work-week

without interruptions from psychologically based symptoms and perform at a consistent pace, ask

simple questions or request assistance, travel to unfamiliar places or use public transportation,

and set realistic goals or make plans independently of others.  AR 629-632.  With specific regard

to Plaintiff's functional capacity assessment, Dr. Nile noted a Global Assessment of Functioning

("GAF") score of 40 and noted as follows: "major impairment in several areas: work, family

relations, judgment, thinking and mood."  AR 633.

   On January 27, 2010, Dr. Nile completed a Mental Residual Functional Capacity

Assessment wherein Plaintiff was identified as markedly limited in all areas of understanding and

memory.  AR 711.  With regard to the category of sustained concentration and persistence, Dr.

Nile opined Plaintiff was not significantly limited regarding his ability to sustain ordinary routine

without special supervision, but was moderately limited in his ability to carry out very short and

simple instructions, and was markedly limited in the other six areas of this category.  AR 711-712.  In the category of social interaction, the doctor opined that Plaintiff was not significantly limited in his ability to ask simple questions or request assistance, but was moderately limited in his ability to accept instructions and respond appropriately to criticism from supervisors, and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, and was markedly limited in his ability to interact appropriately with the general public and to get along with coworkers and peers without distracting them.  AR 712.  Lastly, with regard to adaptation, Dr. Nile identified Plaintiff as not significantly limited in his ability to be aware of normal hazards and take appropriate precautions, moderately limited in his ability to travel to unfamiliar places our use public transportation, and to set realistic goals or make plans independently of others, and was markedly limited in his ability to respond appropriately to changes in the work setting.  AR 712.  Dr. Nile concluded that Plaintiff's GAF score was a 45 and that he is "permanently disabled and unemployable" as a result of the diagnoses of severe PTSD an depressive disorder, not otherwise specified, "mod. severe-severe."  AR 713.

In a second Mental Impairment Questionnaire dated January 27, 2010, Dr. Nile identified the following regarding Plaintiff's "signs and symptoms": poor memory, sleep disturbances, mood disturbance, emotional lability, recurrent panic attacks, anhedonia or pervasive loss of interest, psychomotor agitation or retardation, feelings of guilt/worthlessness, difficulty thinking or concentration, social withdrawal or isolation, decreased energy, intrusive recollections of a traumatic experience, persistent irrational fears, generalized persistent anxiety, and hostility and irritability.  AR 715.  In response to whether Plaintiff would have difficulty working at a regular job on a sustained basis, Dr. Nile indicated the following: "Easily agitated, easily irritated, prone to anger/rage, fleeting homicidal ideation, hard to trust others, sensitive to rejection, hard to work with others.  Problems with authority, [difficulty with] concentration (forgetful, hyper vigilant, exaggerated startled response, mild paranoia."  AR 717.  Finally, with regard to functional limitation, Dr. Nile indicated Plaintiff was markedly limited in his activities of daily living and in maintaining concentration, persistence or pace.  The doctor indicated Plaintiff was extremely

limited in maintaining social functioning, and indicated he had three episodes of decompensation each of extended duration.  AR 718.

**ALJ Madsen's Findings**

The ALJ found as follows:

> Treating physician Dr. Nile completed three different medical source statements.  In December 2006 she opined that the claimant had poor focus, concentration, and retention and was easily distractable.  Dr. Nile concluded that the claimant was incapable of even low stress work and would be absent from work 3 times a month.  She also concluded that the claimant had a mild limitation in his activities of daily living, a moderate limitation in his social functioning, and an extreme limitation in his concentration, persistence, and pace.  In March 2009 Dr. Nile opined that the claimant had a marked or moderate limitation in all areas of social functioning, concentration, persistent or pace, and understanding and memory, and a GAF of 40.  Dr. Nile stated that the onset date for these restrictions became effective on December 7, 2006, which happens to be the date the claimant was laid off work. In January [] 2010, Dr. Nile concluded that the claimant had marked limitation in activities of daily living, maintaining concentration, persistent or pace, and extreme limitation in social functioning. She also opined that the claimant has had three episodes of decompensation, each of extended duration.  However, I give these opinions little weight because [they are] inconsistent with the record and the claimant's own statements.  According to the claimant's own testimony and other evidence in the record the claimant has an active social life, friends, hobbies, and even girlfriends, which are inconsistent with Dr. Nile's opinions and her treatment records.

AR 16-17, internal citations omitted.

**Analysis**

ALJ Madsen offered specific and legitimate reasons to discount the contradicted opinions of Plaintiff's treating psychiatrist; namely, inconsistency with the record, inconsistency with Plaintiff's testimony, and internal inconsistency.  All are proper reasons to afford Dr. Nile's opinions little weight.  *See Magallanes v. Bowen*, 881 F.2d at 751 (a lack of supporting clinical findings is a valid reason for rejecting a treating physician's opinion); *Roberts v. Shalala*, 66 F.3d at 184 (rejecting an opinion that contains internal inconsistencies is a specific and legitimate reason to discount the opinion; rejection of examining psychologist's functional assessment which conflicted with his own written report and test results); *see also Buckner-Larkin v. Astrue*, 2011 WL 4361652 (9th Cir. Sept. 20, 2011).  Simply stated, a careful review of Dr. Nile's treatment notes and records clearly reveals that the doctor's opinions regarding Plaintiff's

1 limitations are not supported by those records.  Plaintiff did in fact testify contrary to Dr. Nile's

2 opinion.  *See, e.g.*, AR 54-56.

3       With regard to Plaintiff's references to GAF scores, a GAF score is a generalized

4 description of the claimant's level of psychological symptoms.  *See American Psychiatric*

5 *Association, Diagnostic & Statistical Manual of Mental Disorders* 30 (4th ed. 2000) ("DSM

6 IV").  The Commissioner has determined the GAF scale does not have a direct correlation to the

7 severity requirements in its mental disorders listings.

8       ALJ Madsen did not err by affording Plaintiff's treating psychiatrist's opinions little

9 weight.  Thus, the ALJ's findings in this regard are supported by substantial evidence and are

10 free of legal error.

11       ***The Opinion of VA Examining Physician***

12       Next, Plaintiff contends the ALJ erred in failing to adopt the opinion of examining

13 physician Henry J. Venter, Ph.D.  (Doc. 12 at 17-18.)  The Commissioner contends the ALJ

14 properly rejected this opinion as well.  (Doc. 13 at 10-11.)

15       **Legal Standard**

16       As noted above, the opinion of an examining physician is entitled to greater weight than

17 the opinion of a nonexamining physician.  *Pitzer v. Sullivan*, 908 F.2d at 506.  The ALJ must

18 provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining

19 physician.  *Pitzer*, 908 F.2d at 506.  If the opinion of an examining physician is contradicted by

20 another doctor, it can only be rejected for specific and legitimate reasons that are supported by

21 substantial evidence in the record.  *Andrews v. Shalala*, 53 F.3d at 1043.

22       Because it is contradicted, Dr. Venter's opinion can only be rejected for specific and

23 legitimate reasons that are supported by substantial evidence in the record.

24       **Summary of Relevant Medical Evidence**

25       On August 7, 2009, Dr. Venter completed a Mental Health Evaluation as part of a

26 compensation and pension examination to assess Plaintiff's claim for veteran's benefits.  AR

27 634-639.  Dr. Venter took a detailed history from Plaintiff, including pre-military history,

28 military background, specific stressors during and after military service, effects of symptoms on

employment and social functioning, psychiatric symptoms experienced in the year prior, impairments of thought process or communication, treatment obtained, alcohol and substance abuse, legal problems, and maintaining activities of daily living. AR 634-637. The doctor's mental status examination findings report that Plaintiff was poorly groomed, fatigued and anxious, with normal eye contact and a poor speech pattern. He was cooperative, had a constricted, blunt and flat affect, and a depressed mood. AR 637. Plaintiff's attention and concentration were poor, and "distractibility" was variable. AR 638. He was oriented to time, place, person and situation, his memory was unimpaired and his cognition was intact. AR 638. Dr. Venter diagnosed anxiety disorder not otherwise specified with mixed anxiety and depressed mood at Axis I and a GAF score of 45 at Axis V. The doctor reported Plaintiff's prognosis as "poor based on his past history and this current examination." AR 639. Dr. Venter believed Plaintiff was unable to function in any occupational setting, including general employment settings, sedentary employment, and loosely supervised settings in which little interaction with the public is required. AR 639.

### ALJ Madsen's Findings

The ALJ found as follows:

> In August 2009 the claimant underwent a compensation and pension examination to assess the claimant's claim for a non-service connected mental disorder an special monthly pension allowance. Psychologist Dr. Venter concluded that the claimant is unable to function in any occupational setting. I give little weight to Dr. Venter's opinion because on mental status examination the claimant was oriented, his memory was unimpaired, [and his] general fund of knowledge was satisfactory. Dr. Venter concluded that the claimant's judgment was impaired marked by using marijuana daily, in spite of being prescribed psychotropic medication. Furthermore, Dr. Venter only saw the claimant one time, did not have any records to review and relied on the claimant's subjective complaints.

AR 17, internal citations omitted.

### Analysis

The ALJ offered several specific and legitimate reasons to reject the contradicted opinion of examining physician Venter, to wit: it is internally inconsistent, the doctor did not review any medical records, and the opinion relies on Plaintiff's subjective complaints. All are proper reasons to discount the physician's opinion. *See Roberts v. Shalala*, 66 F.3d at 184 (rejection of

examining psychologist's functional assessment which conflicted with his own written report and test results); *see also Buckner-Larkin v. Astrue*, 2011 WL 4361652 (9th Cir. Sept. 20, 2011); *Thomas v. Barnhart,* 278 F.3d 948, 957 (9th Cir. 2002) (an ALJ may reject an opinion based on a claimant's discredited subjective complaints); *Morgan v. Commissioner of Social Sec. Admin*., 169 F.3d 595, 602 (9th Cir. 1999); *Fair v. Bowen*, 885 F.2d at 605; *see also Nyman v. Heckler*, 779 F.2d 528 (9th Cir. 1985) (conclusory opinions by medical experts regarding the ultimate question of disability are not binding on the ALJ).

Notably too, Dr. Venter's opinion is in conflict with the opinion of consultative examiner Aimee V. Riffel, Ph.D.  *See* AR 16.  On August 17, 2007, Plaintiff underwent a psychological evaluation with psychologist Aimee V. Riffel, Ph.D.  AR 358-366.  Testing included the Wechsler Adult Scale of Intelligence (WAIS-III), Wechsler Memory Scale (WMS-III), Bender Gestalt (BG-II), Trials Making Tests, Trails A & B, Test of Memory and Malingering (TOMM), and Mental Status Examination.  AR 358.  The doctor's mental status findings note Plaintiff's behavior was generally cooperative, his mental activity stream was within normal limits, thought content was appropriate, mood was unremarkable, and affect was bright.  AR 360-361.  He was oriented times three and his intellectual functioning was recorded as low average.  Speech was normal, judgment was fair to poor for hypothetical situations, and insight was fair.  AR 361.  Following testing, Plaintiff's full scale IQ was recorded as 84, Trails Making Testing produced results in the normal range, and low levels of performance were recorded on the BG-II and WMS-III.  AR 362-363.  Dr. Riffel's diagnostic impression included major depressive disorder, learning disorder not otherwise specified, and a GAF score of 65.  The doctor noted Plaintiff's depression to be "within the mild range" and believed the likelihood his condition would improve was fair.  AR 363-364.  Ultimately, Dr. Riffel found that Plaintiff could follow short and simple instructions and could maintain the appropriate level of concentration, pace and persistence necessary to perform one and two step simple and repetitive tasks.  She found his ability to relate to other, including coworkers, supervisors and the general public, was good.  His ability to tolerate usual stresses was fair, and he was mildly impaired in his ability to manage

changes in routine work setting.  AR 364.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultive examiner's opinion is substantial evidence).

In sum, ALJ Madsen did not err in affording Dr. Venter's opinion little weight.  Her findings are supported by substantial evidence and is free of legal error.

### The ALJ's Findings Regarding Lifting and Carrying

Plaintiff complains the ALJ erred in determining he could lift and carry twenty-five pounds frequently and fifty pounds occasionally.  (Doc. 12 at 18-20.)  In reply, the Commissioner asserts that the ALJ's RFC determination is supported by substantial evidence.  (Doc. 13 at 11-13.)

An RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or an equivalent work schedule.  Social Security Ruling ("SSR") 96-8p.  The RFC assessment considers only functional limitations and restrictions which result from an individual's medically determinable impairment or combination of impairments.  SSR 96-8p.  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'"  *Robbins v. Social Security Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

ALJ Madsen's RFC determination includes the finding that Plaintiff is capable of lifting and carrying fifty pounds occasionally and twenty-five pounds frequently.  It is based upon her consideration of the record as a whole.  AR 14.  As a part of that record, the ALJ noted the findings of internist James A. Nowlan, M.D.

On August 10, 2007, Plaintiff underwent a comprehensive internal medicine evaluation with Dr. Nowlan.  AR 354-357.  Plaintiff complained of low back pain, numbness from his knees to his toes, and blood in his stool.  AR 354.  The physical examination revealed normal findings regarding Plaintiff's vital signs, eyes, ears, nose and throat, neck, chest and cardiovascular, abdomen, pulses and coordination, station and gait.  AR 355.  With regard to range of motion findings, the doctor found range within normal limits, and noted that no tenderness was elicited

in the area about which Plaintiff complained of pain.  AR 355-356.  Motor strength was recorded at 5 of 5 in the bilateral upper and lower extremities.  AR 356.  Dr. Nowlan diagnosed mental illness and "GI bleeding by history."  AR 356.  The doctor concluded that Plaintiff could stand and walk for six hours in an eight-hour day, could sit without limitation, does not require an assistive device and could lift twenty pounds frequently and forty pounds occasionally.  No postural or manipulative limitations were identified.  AR 356-357.

With specific regard to her assessment of Dr. Nowlan's opinion, ALJ Madsen stated:

> Consultative internist Dr. Nowlan concluded that claimant could lift and carry 40 pounds occasionally and 20 pounds frequently, stand and/or walk 6 hours in an 8-hour workday with no restriction on his ability to sit.  I give this opinion significant weight, considering the claimant's minimal lumbar spine degenerative changes.

AR 16, internal quotation omitted.  An adjudicator is in fact required to weigh medical source statements and provide appropriate explanations for accepting or rejecting those opinions.  *See* SSR 96-5p.  However, as pointed out by the Commissioner, the x-ray of Plaintiff's lumbar spine occurred on November 10, 2008, and Dr. Nowlan's report is dated August 10, 2007.  *Cf.* AR 354 to 472.  Thus, the ALJ could properly consider the fact Dr. Nowlan's opinion regarding Plaintiff's lifting and carrying abilities was formed in the absence of the x-ray evidence establishing a mild impairment.

Moreover, the ALJ need not believe everything a physician sets forth, and may accept all, some, or none of the physician's opinions.  *Magallanes v. Bowen*, 881 F.2d at 753-754.  A reviewing court may draw specific and legitimate inferences from discussions of the evidence, particularity where conflicting evidence is detailed and interpreted, and findings are made, in order to assess why a statement or opinion has been rejected or accepted.  *Id*.  Such a review was possible in this case.  Further, following review of the medical records, state agency physicians determined that Plaintiff's physical impairments were non-severe.  *See* AR 16.

It is also interesting to note that the record contains a number of records provided to the ALJ by Plaintiff's counsel prior to the administrative hearing, although the records are not specifically referenced in the ALJ's findings, that lend support for the ALJ's RFC determination.  *See, e.g.,* AR 658-659 & 676-677 ("no spinal issues"); AR 665 (dated 7/7/09: "He has done well

1  [following surgery and treatment for prostate cancer], but has some urinary incontinence and

2  erectile dysfunction.  He is not considered unemployable however due to this, but is currently not

3  employed and looking for work.  The veteran has some degenerative changes noted on the

4  lumbosacral films provided in the medical record, but is giving no complaint of back pain at this

5  time"); 675 (dated 8/11/09: "good results [following excision of prostate], he has had no

6  recurrence or complications.  At the present time he has good normal urinary function without

7  any complaints.  His strength is maintained fairly well").

8         Even had the ALJ's RFC included a forty pound occasional and twenty pound

9  frequent limitation as found by Dr. Nowlan, the outcome would not change the ALJ's ultimate

10  determination that Plaintiff was not disabled.  This is so because the fourth hypothetical question

11  posed by the ALJ to the VE asked the VE to consider an individual, limited to simple, routine

12  tasks and occasional public contact, who could sit, stand or walk for six hours in an eight-hour

13  work day, *with the ability to lift twenty pounds occasionally and ten pounds frequently*.  AR 76,

14  emphasis added.  The VE indicated that the individual could perform Plaintiff's past relevant

15  work as a "clerk driver;" he did not indicate the individual would be precluded from any work.

16  *See* AR 76.  Therefore, Plaintiff's argument, even if persuasive, would not change the end result.

17         To the degree Plaintiff also attempts to argue the ALJ erred at step two, he is mistaken.

18  At the second step of the sequential evaluation of disability, the ALJ determines whether a

19  claimant has a severe impairment or combination of impairments.  A severe impairment is one

20  that significantly limits the claimant's physical or mental ability to do basic work activities.  20

21  C.F.R. § 1520(c).  An impairment or combination of impairments is found "not severe" and a

22  finding of "not disabled" is made at this step when medical evidence establishes only a slight

23  abnormality or a combination of slight abnormalities which would have no more than a minimal

24  effect on an individual's ability to work, even if the individual's age, education, or work

25  experience were specifically considered (i.e., the person's impairment(s) has no more than a

26  minimal effect on his or her physical or mental ability(ies) to perform basic work activities).  *See*

27  SSR 85-28.

28

18

Regarding Plaintiff's diagnosis and subsequent treatment of prostate cancer, ALJ Madsen noted that Plaintiff "underwent prostatectomy in May 2008.  The surgery successfully removed the tumor; and therefore, I find that this impairment also has little, if any, effect on the claimant's ability to work."  AR 13, internal citations omitted.  Again, a review of the medical record reveals that Plaintiff's treatment was successful and thus the ALJ's finding that it had little affect on his ability to work is supported by substantial evidence.

It is clear from this Court's review of the medical record that the ALJ's findings regarding Plaintiff's RFC, as well as the severity of his impairments at step two, are supported by substantial evidence and are free of legal error.

### *Plaintiff's Credibility*

Lastly, Plaintiff contends the ALJ erred because there "is no clear and convincing evidence to show that [he] is not credible."  (Doc. 12 at 20-22.)   The Commissioner contends the ALJ properly found Plaintiff was not entirely credible.  (Doc. 13 at 13-15.)

A two-step analysis applies at the administrative level when considering a claimant's subjective symptom testimony.  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  *Id*. at 1281-1282.  If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing reasons for doing so.  *Id*. at 1281.  The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001), quotations & citations omitted ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

An ALJ can consider many factors when assessing the claimant's credibility. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning his symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the observations of treating and examining physicians. *Smolen v. Chater*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (2007).  "An ALJ is not 'required to believe every allegation of disabling pain' or other non-exertional impairment." *Orn v. Astrue*, 495 F.3d at 635, citation omitted.

The first step in assessing Plaintiff's subjective complaints is to determine whether Plaintiff's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  Here, the ALJ found that Plaintiff had the severe impairments of lumbar degenerative disc disease, major depression, and PTSD.  AR 12.  ALJ Madsen found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's statements concerning "the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." AR 15. This finding satisfied step one of the credibility analysis. *Smolen v. Chater*, 80 F.3d at 1281-1282.

"Despite the inability to measure and describe it, pain can have real and severe debilitating effects; it is, without a doubt, capable of entirely precluding a claimant from working." *Fair v. Bowen*, 885 F.2d at 601.  It is possible to suffer disabling pain even where the degree of pain is unsupported by objective medical findings.  *Id*.  "In order to disbelieve a claim of excess pain, an ALJ must make specific findings justifying that decision."  *Id*., citing *Magallanes v. Bowen*, 881 F.2d at 755.  The findings must convincingly justify the ALJ's rejection of the plaintiff's excess pain testimony.  *Id*. at 602.  However, an ALJ cannot be required to believe every allegation of disabling pain.  "This holds true even where the claimant

1   introduces medical evidence showing that he has an ailment reasonably expected to produce

2   some pain." *Id*. at 603.

3          Specifically here, ALJ Madsen made the following findings:

4               In terms of the claimant's alleged physical impairments, I note that lumbar
        spine x-rays only showed degenerative changes at L5-S1.  The record does not

5       show significant worsening of his back symptoms that would preclude him from
        working.

6               I have taken into consideration the claimant's subjective complaints and
        testimony, but I find his alleged symptoms with regard to his lack of concentration

7       due to his PTSD and depression are overstated.  The claimant worked for some
        time after the onset of his mental symptoms, which he said started in December

8       2001 when his brother was murdered and dismembered.  Since that time he
        reported recurrent intrusive thoughts of his brother's body in a plastic bag even

9       though he did not witness the murder.  The VA records show that the claimant had
        improvement with his medication and although he complained of worsening

10      symptoms on occasion, these were a natural response to the death of loves ones
        and the diagnosis of a potentially life threatening illness, that even mentally

11      healthy people would have.  Furthermore, the claimant only sees his psychiatrist
        every three months, which seems minimal considering the extent of his

12      allegations.

13  AR 15-16, internal citations omitted.

14         Contrary to Plaintiff's assertions, the ALJ provided specific reasons for discrediting

15  Plaintiff's testimony and identified specific testimony or evidence related thereto.  ALJ Madsen

16  noted Plaintiff's quarterly mental health treatment, a legitimate consideration.  *See Fair v.*

17  *Bowen*, 885 F.2d at 603-04 (claiming severe conditions yet receiving minimal, conservative, or

18  no treatment is a basis to reject claimant's testimony).  The ALJ also considered the fact the

19  medical records indicate Plaintiff's symptoms improved with prescription medications.  This too

20  is a proper consideration in assessing credibility.  *Warre Comm'r of Soc. Sec. Admin.*, 439 F.3d

21  1001, 1006 (9th Cir. 2006) (impairments that are effectively controlled with medication are not

22  disabling).  The ALJ also noted the objective medical evidence regarding Plaintiff's lower back

23  complaints did not fully support Plaintiff's subjective complaints.  Again, this was a proper

24  consideration.  *See Tidwell v. Apfel*, 161 F.3d 599, 601-602 (9th Cir. 1998) (finding a mild or

25  minor medical condition with all other tests reporting normal provides a basis for rejecting

26  claimant's testimony of severity of symptoms); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir.

27  1995) (inconsistencies between the record and medical evidence supports a rejection of a

28  claimant's credibility).  Finally, ALJ Madsen noted that Plaintiff worked for some time after the

1  onset of his disabling mental condition, and also that some of his occasionally increasing
2  symptoms could be attributed to his own prostate cancer diagnosis.  This Court finds that these
3  too are proper considerations in a determination regarding credibility.  *See Light v. Soc. Sec.*
4  *Admin.*, 119 F.3d at 792.

5        In sum, the ALJ's findings regarding credibility are supported by substantial evidence and
6  are free of legal error.

## CONCLUSION

8        Based on the foregoing, the Court finds that the ALJ's decision is supported by
9  substantial evidence in the record as a whole and is based on proper legal standards.
10  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the
11  Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in
12  favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff,
13  Ivan Castaneda.

15        IT IS SO ORDERED.

16  **Dated:   April 19, 2012**          **/s/ Gary S. Austin**
17                                 UNITED STATES MAGISTRATE JUDGE